**SO ORDERED.**

**SIGNED this 26 day of May, 2010.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FREDDIE WAYNE LONG, | ) | Case No. 09-12827 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| REVEST, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 09-5303 |
| | ) | |
| FREDDIE WAYNE LONG, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS**

1

Plaintiff ReVest, LLC ("ReVest") moves to dismiss Freddie Wayne Long's counterclaims for failure to state a claim pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6).[1] ReVest filed this adversary proceeding seeking declaratory judgment that it owns certain real property free and clear of any interest of Long. In his answer, Long denied the allegations of ReVest's complaint and asserted claims for relief against ReVest arising out of alleged violations of the Kansas Consumer Protection Act ("KCPA"), the federal Truth In Lending Act ("TILA"), and the Real Estate Settlement Procedures Act of 1974 ("RESPA"). Long also asserts claims sounding in common law fraud claim and quiet title.

**BACKGROUND**

Long essentially claims that ReVest wrongfully induced him to enter into what is titled a purchase and lease-back agreement, but which, according to Long, should be characterized as a loan transaction. On October 4, 2005, Long and ReVest executed an agreement relating to five properties then owned by Long: the Bonn Property, the St. Clair Property, the 167th Street Property, the Reno County Property, and the Lark Property (collectively referred to as "the Properties").[2] The agreement had three major provisions: the first provided for the sale of the Properties from Long to ReVest for $250,000.00 plus closing costs and unpaid property taxes; the second provided for the lease of the Properties back to Long beginning on November 1, 2005 and ending October 31, 2006; and the third provided Long with an option to buy-back the Properties for $291,000.00. The

---

[1] Dkt. 9. This adversary proceeding is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

[2] Exhibits to this agreement, including a list of the properties subject to the agreement, were not attached to the copy of the Agreement that is an exhibit to Long's Counterclaim. According to the Counterclaim, the first four properties are rentals and the last is Long's personal residence.

agreement recited that ReVest would finance its purchase of the Properties with a purchase money loan ("PML") of 100% of the purchase price ($266,000.00) and that the lease payments would approximately be equal to the monthly payments on the PML. Any deficiencies would be added to the buy-back purchase price. The agreement required the buy-back option to be exercised on or before October 31, 2006. To exercise the buy-back option, Long had to tender the purchase price in cash or cash equivalent to ReVest, whereupon ReVest would immediately payoff the PML and execute deeds conveying the Properties back to Long.

Long claims that, on October 12, 2006, ReVest unilaterally increased the buy-back price to $301,400.[3] Long took a $148,200 loan from Wells Fargo and paid the funds to ReVest who classified the funds as a "repurchase" of Long's home. On December 29, 2006, Long and ReVest executed a second agreement which granted Long an option to buy-back the four remaining properties ("the Rental Properties") for $161,000.00 as long as it was exercised by 5 p.m. February 28, 2007. This agreement also provided that Long could continue to lease these properties during the option exercise period, *i.e.*, from December 26, 2006 until February 28, 2007. Long paid an additional $18,000 to ReVest for this new option. If the option was exercised, the $18,000 would be the down payment. Were the option not exercised, the $18,000 would be a non-refundable fee.

Long failed to exercise the option. Although the lease-back of the remaining properties appears to have expired per its terms, Long continued to make payments to ReVest from 2007 until 2009 and remained in possession. Long did not plead any specifics concerning these continuing payments.

Long filed for Chapter 13 relief on August 31, 2009. He filed a Chapter 13 Plan on

---

[3] Answer and Counterclaim of Freddie Wayne Long ("Counterclaim"), Dkt. 6, ¶15 at 4.

November 17, 2009, which provided, in pertinent part, that:

> ReVest will be paid $169,000, over 7 years at 6% interest per annum. Payments will be semi-annual beginning July 1, 2010. All payments will be made through the Trustee. Upon confirmation of the Plan, ReVest will execute release of all personal property lien perfections and surrender any collateral rights, except as provided for herein. Deeds from ReVest to the the Debtor are to be executed within 7 days of confirmation and held by counsel for the Debtor. In the event any payment is untimely, the Deeds will be returned to ReVest and the Debtor will have no further interest in the subject properties.

Long converted this case to one under Chapter 11 on March 26, 2010. He has not, as yet, filed a chapter 11 plan.

## DISCUSSION

ReVest moves to dismiss Long's counterclaims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, arguing that each claim is barred by its respective statute of limitations and/or statute of repose. ReVest also asserts that Long's TILA claim fails because the transaction at issue, alleged by Long to be a business loan, is not covered by TILA. Finally, ReVest claims that Long's RESPA claim must fail because the alleged misconduct (*i.e.*, kickbacks and fee-splitting) did not involve a third party. According to ReVest, if Long cannot prevail on any of these predicate claims, there is no basis for him to quiet title in the Properties. Long concedes that his TILA and RESPA claims can be dismissed,[4] but argues that the statute of limitations has not run on his KCPA, fraud, or quiet title claims because ReVest's continuing conduct constitutes a continuing tort that tolls the statutes.

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings. To withstand a Rule 12(b)(6) motion, a claim for

---

[4] *See* Response of Freddie Wayne Long to ReVest's Motion to Dismiss at 2.

4

relief must contain enough allegations of fact "to state a claim to relief that is plausible on its face."[5] Applying the Supreme Court's *Twombly* test, the Court must determine whether the Counterclaim musters some facts supporting any of his claims. As the Tenth Circuit has noted, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief" and these "[f]actual allegations must be enough to raise a right to relief above the speculative level."[6] If Long's Counterclaim contains enough facts to state a claim upon which relief is "plausible," the Court must deny the motion.[7] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[8]

Claims involving fraud are subject to a heightened pleading standard.[9] Federal Rule of Bankruptcy Procedure 7009 incorporates Federal Rule of Civil Procedure 9(b) and states in part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements, and

---

[5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)

[6] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.2008) (quoting *Twombly*, 127 S.Ct. at 1965).

[7] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007).

[8] *Id.*

[9] Fed. R. Civ. P. 9(b). *See also Burton v. R.J. Reynolds Tobacco Co.,* 884 F.Supp. 1515, 1524 (D. Kan.1995) (Claims that arise under the KCPA are subject to Rule 9(b)'s particularity requirement.).

the consequences thereof."[10] Plaintiffs must set out the "who, what, where and when of the alleged fraud."[11]

"The statute of limitations is an affirmative defense; however, 'when the dates given in the complaint make clear that the right sued upon has been extinguished,' this issue may be resolved on a motion to dismiss."[12] "[O]nce a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to [the plaintiff] to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date."[13]

With these rudimentary principles in mind, the Court turns to the various counterclaims.

<u>The TILA and RESPA claims</u>

Long does not oppose ReVest's motion to dismiss his TILA and RESPA claims. Because the transactions between the parties were primarily for business purposes, neither TILA nor RESPA offer Long a claim for relief.[14] Even if RESPA did not exempt business loans, Long failed to allege a requisite element for a RESPA anti-kickback claim: that fees were shared with a third party.[15]

---

[10] *Lawrence Nat'l Bank v. Edmonds ( In re Edmonds )*, 924 F.2d 176, 180 (10th Cir. 1991). *See also* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1297 at 74 (2004).

[11] *Plastic Packaging Corp. v. Sun Chemical Corp.*, 136 F.Supp.2d 1201, 1203 (D. Kan. 2001).

[12] *Thompson v. Jiffy Lube Inter'l., Inc.*, 505 F.Supp.2d 907, 925 (D. Kan. 2007) (quoting *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

[13] *Escobar v. Reid*, 668 F.Supp.2d 1260, 1287 (D. Colo. 2009) (citing *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

[14] *See* 15 U.S.C. §§ 1602(h), 1603(1) and 12 U.S.C. § 2606(a)(1). *See also Poe v. First Nat. Bank of DeKalb County*, 597 F.2d 895 (5th Cir. 1979) (TILA specifically exempts from its scope extensions of credit for business or commercial purposes).

[15] *See Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002) (holding § 2607(b) "only prohibits overcharges when a 'portion' or 'percentage' of the

6

Both the TILA and RESPA claims are dismissed for failure to state a claim under Rule 12(b)(6).

### The KCPA Claim

The KCPA prohibits any "deceptive act or practice" and any "unconscionable act or practice" "in connection with a consumer transaction."[16] Long asserts ReVest's actions are unconscionable under K.S.A. 50-627 because it took advantage of his medical and emotional condition and deceived him by continually representing to him that the Rental Properties would be returned to him.[17] Long also claims that ReVest's continuing mischaracterization of these transactions as sales, when they were in reality lending transactions, is also unconscionable. ReVest argues that Long's unconscionability claims are time-barred because more than three years has elapsed since the dates of the agreements.

Kan. Stat. Ann. § 60-512(2) fixes the limitations period for claims arising out of statutory violations at three years.[18] Unlike Kan. Stat. Ann. § 60-513, the three-year statute does not provide for a period to discover the claim or to assess the damages before the limitations period begins to

---

overcharge is kicked back to or 'split' with a third party"); *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 626 (7th Cir. 2001) (affirming dismissal under Rule 12(b)(6) where the plaintiffs failed to plead facts tending to show the third party involvement necessary for a § 2607(b) claim); *Welch v. Centex Home Equity Co., L.L.C.,* 262 F.Supp.2d 1263 (D. Kan. 2003) (RESPA fee-splitting provision is anti-kickback provision that unambiguously requires at least two parties to share settlement fee in order to violate statute).

[16] Kan. Stat. Ann. §§ 50-626 and 50-627.

[17] Counterclaim, Dkt. 6, ¶¶ 5-6 of Count 1 at 6.

[18] *See also Alexander v. Certified Masters Builders Corp.*, 268 Kan. 812 (2000) (actions under the KCPA seeking damages and civil penalties are subject to the three year statute of limitations found in K.S.A. 60-512(2) rather than the 1-year statute of limitations found in K.S.A. 60-514(c)).

7

run, nor is there a statute of repose pertaining to KCPA claims.[19]

Long contends his KCPA claim is not barred by the statute of limitations because the limitations period does not begin to run until the last payment has been made on the continuing contract, citing *Beltz v. Dings*.[20] Long alleged he made payments until 2009 and that those payments toll the limitations period, making his KCPA claim timely.[21] The *Beltz* court held that the statute of limitations on a breach of contract claim did not begin to run until the last payment was made under the agreement. Here, Long asserts that he has been wrongly induced to make these payments, not that ReVest has breached a contract per se. The rule in *Beltz* does not apply to non-contractual disputes.

Long also argues that his KCPA claim is not time-barred because ReVest made ongoing representations to him that "[he] would be able to "pay off" the loan and have the properties retitled [sic] in his name."[22] Long essentially urges this Court to apply the continuing violations doctrine which provides that when the last act of a wrongful conduct is part of an ongoing pattern and occurs within the filing period, allegations concerning earlier acts are not time-barred. There are two problems with this argument.

First, and foremost, nowhere in the Counterclaim did Long assert that his lease payments were made in reliance upon misrepresentations of the plaintiff. All his Counterclaim says is that he has continued to make payments and that ReVest has continued to suffer his occupancy of the rented

---

[19] *Four Seasons Apts. v. AAA Glass Service, Inc.*, 37 Kan.App.2d 248, Syl. ¶¶ 2, 5, 152 P.3d 101 (2007).

[20] 27 Kan.App.2d 507 511, 6 P.3d 424 (2000).

[21] Counterclaim, Dkt. 6, ¶ 24 at 5.

[22] Response of Freddie Wayne Long to ReVest's Motion to Dismiss at 1.

8

properties. In deciding a motion to dismiss under Rule 12(b)(6), the Court is limited to the well-pleaded allegations of the parties and such inferences as the law allows it to draw. Bootlegged facts from the motion papers cannot be considered.

Second, in this case and on these facts, the Court cannot apply the continuing violations doctrine. The doctrine is a narrow concept and has been applied very infrequently outside the Title VII employment discrimination context.[23] "The limited areas in which courts have broadened the doctrine's application have involved explicit statutory language, unequivocal legislative intent, or contractual arrangements."[24] Kan. Stat. Ann. § 50-627 contains no explicit statutory language directing the application of the continuing violations doctrine.[25]

A KCPA claim accrues when the KCPA violation occurs.[26] Here, the Counterclaim specifies that ReVest made false or misleading statements to Long when it mischaracterized the true nature of the agreements as purchases rather than loans and when it told Long that he would not "lose" his properties. The Counterclaim states that he was induced to enter into the October 2005 purchase agreement on the strength of these mis-statements. The Counterclaim also states that he entered into the renewed option agreement on December 29, 2006 on the same basis. Long does not specify when these statements were made or by whom, but does plead that "the *transactions* set forth herein

---

[23] *See Thompson v. Jiffy Lube Inter'l., Inc.*, 505 F.Supp.2d 907, 925 (D. Kan. 2007) (citations omitted).

[24] *United Cities Gas Co. v. Brock Exploration Co.*, 984 F.Supp. 1379, 1388 (D. Kan. 1997) (internal quotations omitted).

[25] *See Thompson*, 505 F.Supp.2d at 925. *See also Cline v. Southern Star Central Gas Pipeline, Inc.*, 356 F.Supp.2d 1203 (D. Kan. 2005).

[26] *Campbell v. Hubbard*, 41 Kan.App.2d 1, 7 (Kan. App. 2008) (legal malpractice claim accrued when attorneys quit representing him, rather than when he lost lawsuit in which attorneys had represented him).

9

[in the Counterclaim] were unconscionable under K.S.A. 50-627."[27] While Long's brief states that ReVest has continued to let the optioned properties to Long well after the expiration of the 60-day lease contemplated in the second option agreement, this fact is not pled in the Counterclaim. The Counterclaim merely alleges that Long continued to make payments long after February of 2007. Nor is there any statement about what ReVest told or may be telling Long in connection with his continued occupation of the leased properties. Thus, the only *pleaded* statements upon which Long can base his KCPA claim occurred incident to the formation of either the Purchase Agreement or the Option Agreement, both of which were executed more than 3 years prior to January 13, 2010, the date of the Counterclaim. Lacking any facts relating to the post-transaction misrepresentations upon which Long apparently relies, the Court must conclude that Long's KCPA claim as pled is time-barred.[28]

### The Fraud Claim

Long's Counterclaim alleges ReVest instigated a scheme to set him up for the eventual loss of his rental properties.[29] Long argues that he has been the victim of a continuing fraud because he has been continually induced to pay rents by ReVest's misrepresentations that he will eventually get his properties back if he continues to pay. Again, no such statements were pled in the Counterclaim. They are only referred to in the briefs. They are not part of the record upon which the Court

---

[27] Counterclaim, Dkt. 6, ¶ 4 of Count 1 (emphasis added).

[28] Kan. Stat. Ann. § 50-627 provides that an otherwise unconscionable act violates this section whether it occurs before, during or *after* the transaction. To the extent that Long's KCPA claim is based on actions or statements of ReVest taken or made after the second agreement was executed, there are no facts pleaded to which the Court can apply the plausibility test.

[29] Counterclaim, Dkt. 6, ¶ 2 of Count 4 at 9-10.

considers a motion to dismiss. All that is pleaded is that Long was fraudulently induced to enter into the agreements by ReVest's false statements about the true nature of the deal.

Kan. Stat. Ann. § 60-513(a)(3) provides that an action for fraud shall be brought within two years, but the cause of action shall not be deemed to have accrued until the fraud is discovered. Kan. Stat. Ann. § 60-513(b) provides that:

> a cause of action shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

Long argues his fraud claim accrued on December 11, 2009, the date of ReVest's Complaint because that is when he first realized (*i.e.*, discovered) that ReVest would not restore the properties to him without litigation. Certainly Long knew or should have known that the properties would not be "returned" to him when his option to repurchase them expired in February of 2007, more than two years before the Counterclaim was filed.

Long also argues that the continuing tort doctrine applies to bring his fraud claim within the limitations period. The Tenth Circuit recognizes that the continuing tort doctrine may apply in fraud claims to affect when the limitations period begins to run.[30] That doctrine provides that the limitations period begin to run from the date of the last injury.[31] Long relies on his continued payments to toll the limitations period, but the fact that he made payments to ReVest in 2007, 2008, and 2009 does not, standing alone constitute an allegation that ReVest continually induced him to

---

[30] *Tiberi v. CIGNA Corp.*, 89 F.3d 1423, 1430-1431 (10th Cir. 1996).

[31] *Id.* at 1430.

11

make payments on the assurance that he would eventually get his properties back. As noted above, Rule 9 requires fraud claims to be pleaded with specific facts about who said what to whom, when it was said, and the manner in which the pleader relied to his detriment. In the absence of these facts, the Court is forced to conclude that Long's fraud cause of action is time-barred, too.

### The Quiet Title Claim

Long alleges that ReVest has no right, title or interest in the Rental Properties and that title to said properties should be quieted in his name. Kansas law authorizes one claiming title to or an interest in real property to maintain an action to quiet title against any person who claims an adverse claim.[32] In order to meet the plausibility test, Long must assert some basis for his claim to the properties. In the Counterclaim, Long admits that he executed deeds to the properties and delivered them to ReVest, albeit nominally. The only way the quiet title action would retain any vitality would be if Long could successfully challenge the validity of those deeds or the formation of the purchase agreement by demonstrating that ReVest acted wrongfully in inducing him to execute them. In the absence of viable predicate causes of action, his quiet title action is implausible. Because both those claims are time-barred, his quiet title claim would collapse for lack of a claim to the properties.[33]

### Leave to Amend

Dismissal of a claim with prejudice is a harsh remedy. "As a general matter, a party should

---

[32] Kan. Stat. Ann. § 60-1002(a).

[33] While the statute of limitations for a quiet title action is typically 15 years, *see* Kan. Stat. Ann. § 60-507, the two-year statute pertaining to fraud set forth in Kan. Stat. Ann. § 60-513(a)(3) applies here. *See Sutton v. Sutton*, 34 Kan.App.2d 357 (2005) (affirming district court's decision to apply Kan. Stat. Ann. § 60-513(a)(3) rather than Kan. Stat. Ann. § 60-507 to action for recovery of real property based on a conveyance of title obtained by fraud).

be granted an opportunity to amend his claims prior to a dismissal with prejudice."[34] Indeed, leave to amend is usually permitted if a pleader fails to plead fraud or mistake with sufficient particularity.[35] Dismissal with prejudice is warranted only when a court determines that the allegation of other facts could not possibly cure the deficiency or would be futile.[36] Because the Court can easily conceive of amendments to the Counterclaim that would save it, the Court will grant Long leave to amend to plead with specificity his allegations of misrepresentations made in the conversations alleged to have occurred within the applicable statutes of limitation.

Conclusion

Long's TILA and RESPA claim are dismissed with prejudice. Long's KCPA, fraud, and quiet title claims are dismissed with leave to amend to plead with specificity his allegations of misrepresentations alleged to have occurred within the applicable statutes of limitation. Long is cautioned to heed the mandates of Rule 8 and 9. Restatements of the claims dismissed with prejudice will not be entertained. Long shall have 21 days from the date of this Order to file an amended Counterclaim, or the KCPA, fraud, and quiet title claims will be dismissed without further notice.

# # #

---

[34] *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 fn 5 (10th Cir. 2001).

[35] 2 Moore's Federal Practice, §9.03[4], 933 (3rd ed. 2010). *See also Firestone v. Firestone*, 76 F.3d 1205 (D.D. Cir. 1996) (neither the determination that claims were time-barred nor the determination that the complaint failed to plead fraud with particularity support a dismissal with prejudice); *Luce v. Eelstein*, 802 F.2d 49, 56 (2d Cir. 1986).

[36] *Firestone*, 76 F.3d at 1209. *See also Curley v. Perry*, 246 F.3d 1278 (10th Cir. 2001) (court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim).